**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 12-23468-CIV-GARBER

LOURDES L. VAZQUEZ,
        Plaintiff,
v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,
        Defendant.
_____/

**ORDER**

        THIS CAUSE is before the Court on the parties' Consent to Magistrate Jurisdiction. (DE 17.)  Pursuant to such consent, the Court has received and reviewed plaintiff Lourdes L. Vazquez's Motion for Summary Judgment (DE 23); and the defendant Carolyn W. Colvin, Acting Commissioner of Social Security's Motion for Summary Judgment and Response to Plaintiff's Motion for Summary Judgment (DE 26 & 27). No other responses or replies were received. The general issues before this Court are whether the record contains substantial evidence to support the denial of benefits to the plaintiff and whether the proper legal standards were applied.  Upon a review of the filings and the record in this case and upon due consideration, the undersigned respectfully RECOMMENDS that the administrative decision below be AFFIRMED for the reasons set forth below.

I.      **Brief Statement of Facts and Procedural History**[1]

        Pursuant to 42 U.S.C. § 405(g), Vazquez seeks judicial review of the final administrative decision of the Commissioner of Social Security denying her claims for supplemental security

_____

[1]The record upon which the ALJ based his findings is voluminous. Very little of this record, however, pertains to the issues raised by the parties on appeal. Regarding the medical record in this case, Vazquez raises primarily issues pertaining only to: whether the ALJ should have found additional impairments to be severe; whether the ALJ improperly disregarding the opinions of two treating physicians; and the discrepancy between the Department of Labor's *Dictionary of Occupational Titles* requirements and Vazquez's residual functional capacity. Thus although the record has been carefully reviewed in its entirety, the Court finds no need to rehash herein all of the intricacies of Vazquez's medical history except where necessitated by the parties' arguments. The ALJ's determinations regarding the remainder of the record is not otherwise in dispute. All citations to the record in this case will correspond to the marked pages of the administrative transcript ("R."), entered on the Court's docket at DE 13 with its accompanying attachments.

income and disability insurance benefits. In denying Vazquez's claims, the administrative law

judge considering her application applied the sequential evaluation process used in evaluating such

claims. 20 C.F.R. §§ 404.1520, 416.920. This process requires the ALJ to consider, in sequence,

whether a claimant: (1) is working; (2) has one or more severe impairments, as defined in the

regulations; (3) has one or more impairments that meet or medically equal the requirements of an

impairment listed in the regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1, (the "Listings");

(4) can return to her past relevant work; and (5) if not, whether she can perform other work. *Id.*

Since the claimant was found to be not working at step one of the analysis, the ALJ here

proceeded to the second step and found that Vazquez had the severe impairments of "major

depression and general anxiety disorder." (R. at 33.)

At step three, the ALJ determined that none of Vazquez's impairments, or any combination

thereof, met or medically equaled the severity of any of the Listings, specifically considering

12.04, "Affective Disorders"; and 12.06, "Anxiety-related Disorders." (R. at 35.) Proceeding

through the evaluation, the ALJ next considered the evidence presented and assessed Vazquez's

residual functional capacity, finding her able "to perform a full range of work at all exertional

levels but with [certain] nonexertional limitations." (R. at 36.) These impairments resulted in the

ALJ finding that Vazquez was limited to performing "simple, routine, competitive, repetitive tasks

on a sustained basis over a normal 8-hour workday but she is unable to perform complex and

detailed tasks." (*Id*.)

Continuing on to step four, the ALJ found that, based on testimony from a vocational

expert and in comparing the claimant's residual functional capacity and the physical and mental

demands of the work, Vazquez was capable of performing her past relevant work as a

housekeeper. (R. at 41.) The ALJ therefore determined that Vazquez "has not been under a

disability" as defined under the Act. (*Id.*) The Appeals Council's denial of a request for review rendered the ALJ's decision final. (R. at 1-3.) Vazquez's timely filed suit for review of the administrative decision in this Court followed.

II.     **Standard of Review**

The ALJ's decision is reviewed to determine if it is supported by substantial evidence and based on proper legal standards. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (internal citations omitted). When supported by substantial evidence, the ALJ's findings are conclusive. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is more than a scintilla, but less than a preponderance, and is generally defined as such relevant evidence as a reasonable mind would accept as adequate to support a conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). In determining whether substantial evidence exists, a court must take into account evidence that is favorable as well as unfavorable to the decision. *Id.*

Although the ALJ's factual findings are limited to a deferential standard of review, no presumption of validity is applied to his legal conclusions, including a determination of the appropriate legal standards to be applied in analyzing and deciding a claim for benefits. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). Unless the error is deemed harmless, where either the law has not been correctly applied, or the court has not been furnished with sufficient reasoning for determining that the law has been correctly applied, reversal is mandated. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991); *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (applying the harmless error doctrine to a social security appeal).

The claimant bears the burden, through steps one through four of the analysis, of proving the existence and severity of limitations caused by his impairments and that he is precluded from

performing his past relevant work, if any. *Hale v. Bowen*, 831 F.2d 1007, 1001 (11th Cir. 1987).

Once this has been established, the burden then shifts to the Commissioner to show the existence

of other jobs in the national economy which, given the claimant's impairments, the claimant can

perform. *Id*.

III.     **Discussion**

In seeking to have the ALJ's decision reversed and her application either granted or

remanded for further consideration, Vazquez contends that certain aspects of the ALJ's decision

are either not based on substantial evidence or are the result of an improper application of the law.

This is so, Vazquez argues, in three general respects: (A) the ALJ's finding that her asthma and

lumbar pain were not severe impairments was not supported by substantial evidence; (B) the ALJ

improperly disregarded the opinions of two of Vazquez's treating physicians; and (C) the ALJ

erred in finding that she could return to her past relevant work because the requirements of that

work as described in the *Dictionary of Occupational Titles*[2] conflicted with her residual functional

capacity. For the following reasons, the Court finds that Vazquez's contentions are without merit

and therefore AFFIRMS the administrative decision, denying Vazquez's claims, in all respects.

A.     **Substantial evidence supports the ALJ's findings at step two of the sequential evaluation process.**

As described above at step two, the ALJ must determine, simply, whether or not the

claimant has a medically determinable impairment that is "severe" or any combination of

impairments that is "severe." 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or

combination of impairments is severe within the meaning of the regulations if it significantly limits

an individual's ability to perform basic work activities. *Id*. An impairment or combination of

---

[2](4th ed. rev. 1991).

impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Soc. Sec. Rs. 85-28, 96-3p, and 96-4p. If the claimant does not have a severe medically determinable impairment or combination of impairments, she is not disabled. If the claimant is found to have a severe impairment or combination of impairments, the disability analysis proceeds, according to the framework laid out above.

To begin with, since the ALJ determined that Vazquez's major depression and general anxiety disorder were severe impairments and then duly proceeded through the remaining steps of the sequential evaluation process, any error in not finding her low back pain and asthma severe would be harmless. *Diorio*, 721 F.2d at 728 (11th Cir. 1983) (applying the harmless error doctrine to a social security appeal). By proceeding through the remainder of the analysis, the integrity of the ALJ's analysis remained intact. *See Heatly v. Comm'r of Soc. Sec.*, 382 Fed. App'x 823, 824-25 (11th Cir. 2010) (even if ALJ erred in not indicating whether chronic pain syndrome was a severe impairment, error was harmless because the ALJ found that plaintiff had another severe impairment and that finding is all that step two requires). *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th 1987) (failure of Secretary to find that an impairment was severe was not reversible error because he found that claimant had other severe impairments).

"Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly*, 382 Fed. App'x at 825. But even if there was such a requirement, the Court finds that the ALJ's determination that Vazquez's low back pain and asthma were not severe impairments is supported by substantial evidence nonetheless. Vazquez takes issue with the ALJ's determination that "[t]here is no indication that asthma, which she has

had since childhood, hypertension, or back pain were unresponsive to treatment, or that they caused specific and prolonged limitation of function." (R. at 35.) To rebut the ALJ's claims regarding her asthma and low back pain, Vazquez cites to a number of instances in the record where she sought treatment for her ailments and where her physicians' treatment notes indicated that she was suffering from certain symptoms. However, just because Vazquez may have been symptomatic during certain periods does not rebut the ALJ's findings that she was responsive to treatment. Nor do these isolated notations necessarily  indicate periods of "prolonged limitation of function." (*Id.*) Vazquez focuses her argument on some evidence in the record that conflicts with the ALJ's findings. That, however, is not the standard. In order for the ALJ's findings to be reversed, Vazquez would have to come forward with record support for her position that the ALJ's findings themselves are not supported by substantial evidence. This she has failed to do.

First, Vazquez asserts only that she was diagnosed with asthma and lumbar pain. But the mere fact that she was diagnosed with these conditions is not sufficient, in and of itself, to establish that the conditions are severe. 20 C.F.R. §§ 404.1520(c), 416.920(c); *see Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991) (stating that disability is not determined merely by the presence of impairments, but rather on the functional restrictions the impairments have on the individual). Vazquez has failed to controvert the fact that substantial evidence in the record shows that these conditions do not significantly limit her ability to work. For example, the ALJ noted that despite her asthma diagnosis, Vazquez continued to smoke a pack of cigarettes a day despite being told that her condition would not improve if she refused to quit. (R. at 34, 395, 401.) She was also cleared to undergo the exercise and exertion required for a nuclear stress test and her asthma treatment consisted merely of routine medication management. (R. at 401-04, 412.) And although she asserts that she was hospitalized for asthma in July 2009, the hospital records reveal that she

was treated for and diagnosed with bronchitis, fever, and a cough. (R. 288-89.) In fact, her

physical examination notes from that hospital visit reveal "[n]ormal respiratory effort" and "no

rales, rhonchi, or wheezes." (R. at 288.) The record portions cited to by Vazquez show only that

she was treated intermittently for asthma and that sometimes the asthma was worse and sometimes

it was better. (R. 382-90; 395-99; 410-05.)

   With respect to her low back pain, the ALJ specifically detailed that the most recent

doctor's treatment note opining on her lower back condition documented that Vazquez had been

"relieved of [her] low back pain after be[ing] in treatment and wearing a back support." (R. at

331.) The orthopedic treatment notes relied upon by the claimant to prove the severity of her

impairment arise prior to this note and during her period of treatment. Vazquez also looks to the

opinions of a treating physician which the ALJ properly afforded no weight, as discussed below.

Because the ALJ properly declined to accept this doctor's disability statement, those opinions are

of no use to Vazquez in supporting her claims.

   At most Vazquez has pointed to some evidence, of varying degrees of value and reliability,

that could be interpreted as conflicting with the substantial evidence relied upon by the ALJ. But

simply pointing to some conflicting evidence in a long and complicated medical record is not

sufficient to demonstrate that the ALJ's decision was not itself based on substantial evidence. In

sum, substantial evidence supports the ALJ's decision not to list Vazquez's asthma and low back

as severe impairments.

   B.     **The ALJ's decision to afford no weight to the opinions of two of Vazquez's treating physicians was proper.**

   Contrary to Vazquez's argument, the ALJ properly determined that certain medical

opinions concerning her physical and mental functional abilities should be afforded no weight.

When assessing the weight given to a medical opinion, an ALJ considers various factors, such as whether the opinion is supported by medical signs and laboratory findings, whether the opinion is consistent with the record as a whole, and whether the opinion is rendered by a specialist. *See* 20 C.F.R. §§ 404.1527, 416.927 (explaining how the ALJ evaluates opinion evidence). Although the Commissioner generally will give enhanced weight to the findings and opinions of treating physicians, the Commissioner is not required to accept a treating physician's opinion uncritically. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). In order to be entitled to controlling weight, a physician's opinion must be "well supported by medically acceptable clinical and laboratory diagnostic techniques," and must not be "inconsistent with the other substantial evidence in the record." 20 C.F.R. §§ 404.1527(c)(2), (3), 416.927(c)(2), (3). Thus, if a treating source's opinion is not supported by clinical observations or data, it is not entitled to any particular deference. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

First, the ALJ reasonably found that Dr. Juan Jesus Salina, a physician from whom Vazquez received general health care from January 26, 2006 to November 17, 2010, relied heavily on Vazquez's own statements and accepted them uncritically in completing his Medical Source Statement. (R. at 38.) Next the ALJ found that Dr. Salina's opinion was actually inconsistent with the medical record as a whole, including the doctor's own findings. (*Id.*) Despite the drastically restrictive findings in his source statement, for example, Dr. Salina opined that Vazquez could still shop, travel alone, use public transportation, prepare simple meals, and care for her personal hygiene. (R. at 321.) Likewise, Dr. Salina recommended only conservative treatment of Vazquez's back pain, including a back support, physical therapy, and only nonsteroidal anti-inflammatory medications. (R. at 316.) Dr. Salina's opinion was also inconsistent with other medical evidence of record as objective testing revealed only mild abnormalities. For example, an x-ray of Vazquez's

8

spine showed no evidence of fracture or dislocation, but only minor narrowing in a few disc spaces and only early degenerative changes at her lumbar and thoracic segments. (R. at 338.) Although an MRI of Vazquez's lumbar spine showed a disc bulge, she had full range of motion of both lower extremities and she ambulated with a normal gait. (R. 334.) She was also cleared by another doctor to "undergo exercise testing and/or participate in [an] exercise program" with no noted restrictions. (R. at 403.) Dr. Salina's dire findings were also at odds with Vazquez's own statements about her activities. (R. at 38.) Vazquez reported that she drove regularly, shopped, cooked, performed household chores, visited her mother as well as her adult son and his family, and regularly attended church. (R. 177-81, 200-04.) Particularly telling was her statement to another treating physician that she was "relieved of the low back pain after [having] been in treatment and wearing a back support." (R. 331.)

With respect to Vazquez's treating psychiatrist, Dr. Alfredo Piniella, the ALJ noted that his findings also relied heavily on Vazquez's own statements rather than on the objective medical evidence. (R. at 38.) Additionally the ALJ found that Dr. Piniella's opinion, like Dr. Salina's, was inconsistent with other evidence of record, including his own notes. (*Id*.) For example, in February 2011, Dr. Piniella initially opined that Vazquez's ability to understand, remember, and carry out instructions was not affected by her impairment. (R. at 359.) Nevertheless, he went on to make several restrictive findings contrary to this opinion. (R. 359-60.) Also, despite his findings that Vazquez experienced disabling hallucinations, on no fewer than fifteen out of sixteen of the psychiatrist's clinical progress notes, he noted specifically that Vazquez's objective mental status examination revealed no hallucinations whatsoever. (R. 309, 421-22, 424-36.) Dr. Piniella's records also reveal that Vazquez consistently attested that she was doing well, even feeling "100% better." (R. 421-22, 424, 429, 431.) Dr. Piniella's findings were also inconsistent with Vazquez's

9

own statements and activities. (R. 38.) Although Vazquez reported that she had no trouble getting

along with authority figures, Dr. Piniella opined that her ability to interact appropriately with

supervisors was markedly or extremely restricted. (R. 183, 356, 360.) In contrast to Dr. Piniella's

restrictive findings, Vazquez also reported that she drove regularly, shopped, cooked, performed

household chores, visited her mother and adult son, and regularly attended church. (R. 177-81,

200-04.)

In the end, Vazquez is asking the Court to re-weigh the evidence and reach a different

conclusion about the medical opinion evidence. But the Court is not permitted to do so.

*Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). It is the ALJ's exclusive duty, as

fact finder, to evaluate the medical opinions of record. 20 C.F.R. §§ 404.1527, 416.927. The ALJ

carefully reviewed and evaluated the physicians' opinions and records, noting inconsistencies,

both internal and with the record as a whole. Thus, for the reasons discussed above and in the

ALJ's decision, the ALJ's analysis of the medical opinion evidence was reasonable and supported

by substantial evidence.

C. **The requirements of the claimant's past relevant work as set forth in the *DOT* do not conflict with her residual functional capacity.**

Ultimately the ALJ found that Vazquez could return to her past relevant work as a

housekeeper. *DOT* § 301.687-010. Vazquez argues that there is a conflict between the reasoning

requirements of this job as set forth in the DOT and the ALJ's assessment of her residual

functional capacity. The *DOT* description for the job of housekeeper requires that the worker have

a General Education Development[3] reasoning level of two. This level, in turn, is defined in the

---

[3]The GED component of each job description in the *DOT* "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance. This is education of a general nature which does not have a recognized, fairly specific occupational objective." *DOT*, App'x C, 1991 WL 688702. Such education

10

*DOT* as being able to: "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions"; and "[d]eal with problems involving a few concrete variables in or from standardized situations." *DOT*, App'x C, 1991 WL 688702. This, Vazquez argues, is incompatible with the ALJ's finding that she is "unable to perform complex and detailed tasks." (R. at 36.) The Court, however, finds Vazquez's contention misplaced.

Being unable to perform "complex and detailed tasks" does not equate to being unable to carry out "detailed but uninvolved . . . instructions." Vazquez appears to focus her attention on equating the word "detailed" used in both the ALJ's residual functional capacity assessment and the *DOT*'s requirements of reasoning level two. But the Court does not find such a parallel to exist.

First, the regulations separate a claimant's ability to understand and remember things and to concentrate into just two categories: "short and simple instructions" and "detailed" or "complex" instructions. 20 C.F.R. § 416.969a(c)(1)(iii). The *DOT*, conversely, uses a much more nuanced and graduated scale: starting from the most basic ("simple one- or two-step instructions" at reasoning level one), moving up to the most complex ("apply principles of logical or scientific thinking" and "apprehend the most abstruse classes of concepts" at reasoning level six). *DOT*, App'x C, 1991 WL 688702. If the use of the term "simple" in the regulations is directly correlated with its use in the *DOT*, this would require that all jobs with a reasoning level of two or higher would be incorporated within the regulations' use of the word "detail." But "[s]uch a 'blunderbuss' approach is not in keeping with the finely calibrated nature in which the *DOT* measures a job's simplicity." *See Meissl v. Barnhart*, 403 F. Supp. 2d 981, 984 (C.D. Cal. 2005).

---

may be obtained from elementary school, high school, or college or from experience and self-study. *Id*. "The GED Scale is composed of three divisions: Reasoning Development, Mathematical Development, and Language Development." *Id*. The scale ranges from a low of one to a high of six. *Id*.

The equating of the word "detailed" in both contexts is also problematic in that Vazquez

ignores the qualifier the *DOT* places on the term "detailed" as being "uninvolved." This qualifier

further calls into question the propriety of equating the regulations's use of the term in formulating

a residual functional capacity with the *DOT*'s use of the term in the reasoning levels. *See id.* The

*DOT* downplays any complications in the "detailed" instructions by describing them as being

"uninvolved." Conversely, the ALJ emphasized any complications by adding the word "complex"

to the "detailed" tasks that he found Vazquez incapable of. (R. at 36.) He also noted that Vazquez

could "perform simple, routine, competitive, repetitive tasks on a sustained basis." (*Id.*) Many

courts have found that this level of functioning is consistent with the level two reasoning described

in the *DOT. See, e.g., Miller v. Comm'r of Soc. Sec.*, 246 F. App'x 660 (11th Cir. 2007)

(unpublished) (no remand where VE identified even reasoning level three jobs for a plaintiff who

could do only simple, routine, and repetitive work); *Terry v. Astrue*, 580 F.3d 471 (7th Cir. 2009)

(even level three reasoning not inconsistent with plaintiff's ability to perform only simple work);

*Renfrew v. Astrue*, 496 F.3d 918 (8th Cir. 2007) (reasoning level three not inconsistent with

plaintiff's inability to do complex work)*; Hackett v. Barnhart*, 395 F.3d 1168 (10th Cir. 2005)

(stating that "level two reasoning appears more consistent with [p]laintiff's RFC" of "simple and

routine work tasks"); *Lara v. Astrue*, 305 F. App'x 324 (9th Cir. 2008) (unpublished) (plaintiff

who is able to perform simple repetitive tasks capable of doing work at reasoning level two);

*Money v. Barnhart*, 91 F. App'x 210 (3d Cir. 2004) (unpublished) ("Working at reasoning level 2

would not contradict the mandate that [claimant's] work be simple, routine and repetitive.")*;*

*Hurtado v. Astrue*, No. 09-60930-CIV, 2010 WL 1850261, at *11 (S.D. Fla. April 14, 2010)

("Most courts which have addressed this issue have held that the requirement of Reasoning Level

2 or 3 is not inconsistent with the ability to perform only simple tasks."); *Marley v. Comm'r of*

*Soc. Sec.,* No. 8:13-cv-2384-T-CM, 2015 WL 847376, at *4 (M.D. Fla. Feb. 26, 2015) (affirming

where ALJ found that even a reasoning level of three is not necessarily in conflict with the

plaintiff's limitation to simple work); *Gray v. Colvin*, No. 3:12cv506/EMT, 2014 WL 1118105, at

*8 (N.D. Fla. Mar. 20, 2014) (finding that "even if Plaintiff has the mental RFC to perform only

'simple, routine tasks' and retains the ability to understand, remember, and carry out only very

short and simple instructions, these capacities are consistent with a reasoning level of two or three,

not a reasoning level of one . . . ."); *Short v. Astrue*, No. 3:11-cv-713-N-BN, 2013 WL 655020, at

*10 (N.D. Tex. Feb. 5, 2013) (agreeing that jobs with a reasoning development level two are

consistent with limitations to simple instructions and routine tasks); *Davis v. Astrue*, No. SAG-11-

2279, 2013 WL 153594, at *2 (D. Md. Jan. 14, 2013) (finding reasoning level two consistent with

a restriction to simple, routine tasks); *Anderson v. Astrue*, Case No. 2:11-00046, 2011 WL

3843683 at *4-5 (S.D. Ala. Aug. 30, 2011) (noting that "several other courts have concluded that

jobs with a reasoning level of two are consistent with simple, unskilled work")*;Meissl*, 403 F.

Supp. 2d at 984-85 (holding that DOT's level two reasoning requirement did not conflict with the

ALJ's finding that plaintiff could perform work involving simple, routine tasks)*; Flaherty v.

Halter*, 182 F. Supp. 2d 824, 850 (D. Minn. 2001) (stating that "the DOT's level two reasoning

requirement did not conflict with the ALJ's prescribed limitation" to "simple, routine, concrete,

tangible tasks")*.* The Court finds these decisions persuasive. Vazquez's contention that her

residual function capacity, as determined by the ALJ, would prevent her from performing a job

with a reasoning level of two is therefore without merit.

    D.   **Conclusion**

        Upon careful consideration, the Court finds that there is substantial evidence in the record

as a whole to support the administrative decision below and that said decision otherwise comports

with all relevant legal standards. The Court therefore

ORDERS that the administrative decision is AFFIRMED.

Accordingly, it is also ORDERED that Vazquez's Motion for Summary Judgment (DE 23)

is DENIED and that the Commissioner's Motion for Summary Judgment (DE 26) is

GRANTED.

DONE and ORDERED in Chambers at Miami, Florida, this 25th day of March 2015.


BARRY L. GARBER
UNITED STATES MAGISTRATE JUDGE